JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Raymond Henley ("defendant"), appeals following his convictions and sentence on 91 counts, which included charges of engaging in corrupt acts (R.C.2923.32), tampering with records (R.C. 2913.42), forgery (R.C.2913.31), unauthorized use of property (R.C. 2913.04), possession of criminal tools (R.C. 2923.24), theft (R.C. 2913.02), taking the identity of another (R.C. 2913.02), and securing writings by deception (R.C. 2913.43). For the reasons that follow, we affirm.
 {¶ 2} Defendant was charged along with seven other co-defendants in a 125-count indictment, 99 of which applied to defendant. Eight counts against defendant were dismissed prior to trial. Following a bench trial, defendant was found guilty of 91 counts and sentenced to seven years in prison.
 {¶ 3} This Court has had prior occasion to review and address the trial proceedings through the appeal of co-defendant Edwin Rumph ("Rumph"). The facts of this case as set forth in State v.Rumph, Cuyahoga App. No. 86480, 2006-Ohio 1088, are incorporated herein. We will refer to additional facts from the record where appropriate in addressing defendant's five assigned errors, as set forth below.
 {¶ 4} "I. Defendant was denied due process of law when the court overruled defendant's motion to dismiss by reason of pre-indictment delay."
 {¶ 5} The statute of limitations provides the "primary guarantee against bringing overly stale criminal charges."United States v. Lovasco (1977), 431 U.S. 783. Notwithstanding, dismissal of charges commenced within the period of limitations may be required when there has been an unjustifiable pre-indictment delay.
 {¶ 6} "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." State v. Luck (1984),15 Ohio St.3d 150, paragraph 2 of the syllabus; see, also, United Statesv. Lovasco (1977), 431 U.S. 783. If defendant establishes actual prejudice, the burden shifts to the State to establish justifiable delay. Id. at 153; confirmed by State v. Whiting
(1998), 84 Ohio St.3d 215, 217.
 {¶ 7} Courts reviewing a decision on a motion to dismiss for pre-indictment delay accord deference to the lower court's findings of fact but engage in a de novo review of the lower court's application of those facts to the law. State v.Cochenour (Mar. 8, 1999), Ross App. No. 98CA2440, citing Statev. Metz (Apr. 21, 1998), Washington App. No. 96CA48.
 {¶ 8} Defendant offered the following as proof of actual prejudice: (1) witnesses' memories had faded and (2) had he been indicted earlier he could have consolidated his convictions in this case with convictions he received in an earlier indicted case through a single plea or trial.
 {¶ 9} Defendant's generalized claims that witnesses' memories had faded over time is insufficient to establish actual prejudice. Cochenour, supra, citing State v. Metz (Apr. 21, 1998), Washington App. No. 96CA48; State v. Glasper (Feb. 21, 1997), Montgomery App. No. 15740. Thus, that memories may fade over time does not offer the concrete proof necessary to establish actual prejudice.
 {¶ 10} Defendant claims the State had all the information it needed to indict defendant on these charges by May 2002, including the count for engaging in a pattern of corrupt activity. He concludes he was prejudiced by the delay because he could have resolved all counts in one case. Assuming arguendo that this would establish actual prejudice, we find that the trial court did not err in overruling the motion to dismiss, because the State satisfied its burden of justifying any delay.
 {¶ 11} The State maintains that the complex nature of the criminal enterprise required extensive investigation thereby justifying the date of indictment in this case. The State maintains that at the time of defendant's initial statement in 2001, the investigation was in its initial stages and on-going. The State did not know the extent of the criminal activities, which spanned from falsifying numerous drivers licenses to counterfeiting checks to identity theft. The State cites to Investigator Russo's involvement beginning in November 2001, that he conducted over 100 interviews, reviewed 4,500 BMV documents, and discovered 53 licenses falsified at the Maple Heights BMV. The record contains further indication that the investigation into the subject motorcycle registrations and titles took 18 months to investigate. At least one of the victims of identity theft lived out of state.
 {¶ 12} The cases cited by defendant are all factually distinguishable. The record reveals a complex criminal operation that involved numerous individuals and a multi-faceted crime ring. In some instances identities were stolen and in others individuals actually sold their personal information for use in the thefts. Check drafts belonging to various entities/individuals were counterfeited, forged, and deposited into bank accounts, which amounts were then withdrawn and sometimes used to purchase motorcycles from various dealerships using fake identities. The record does not support defendant's contention that the State delayed indictment to gain some sort of tactical advantage rather than to complete its investigation.
 {¶ 13} Although eight of the 99 counts against defendant in this case were redundant to his previous convictions, those counts were dismissed by the State. We do not agree that there should be essentially a presumption of unjustifiable pre-indictment delay just because the eight redundant and dismissed counts involve criminal activity similar to the 91 other counts for which he was indicted in this case. Stated differently, that the State was able to indict defendant on eight counts at an earlier time does not mean there was an ability to indict him on all 99 counts at that time.
 {¶ 14} Assignment of Error I is overruled.
 {¶ 15} "II. Defendant was denied due process of law when a continuance was not granted and the prosecutor was allowed to amend the indictment.
 {¶ 16} "III. Defendant was denied due process of law when the court allowed an amendment to the indictment filed [sic] resubmission of the cause to the Grand Jury."
 {¶ 17} Defendant contends that the trial court erred by denying his request for a continuance and/or by not resubmitting the case to the Grand Jury after allowing the State to change the name of the victim in certain counts of the indictment.[1]
 {¶ 18} Crim.R. 7(D) provides in relevant part:
 {¶ 19} "The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment * * * or to cure a variance between the indictment * * * and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury."
 {¶ 20} It is well settled that an amendment to an indictment which changes the name of the victim changes neither the substance nor the identity of the crime charged. State v. Owens
(1975), 51 Ohio App.2d 132, 149, citing In re Stewart (1952),156 Ohio St. 521; Dye v. Sacks (C.A.6, 1970), 279 F.2d 834; see, also, State v. Henize (Nov. 1, 1999), 12th Dist. No. CA99-04-008; State v. Harris (Mar. 4, 1999), 8th Dist. No. 73921.
 {¶ 21} As there was no change to the substance of the crime charged, defendant was not entitled to a continuance or to have the matter resubmitted to the Grand Jury. See State v. Mader
(Aug. 30, 2001), Cuyahoga App. No. 78200, distinguishing Statev. Vitale, 96 Ohio App.3d 695. Furthermore, and despite defendant's protestations to the contrary, he should not have been surprised or prejudiced by the amendment, since the pre-trial discovery produced to him reflected the identity of the victims.
 {¶ 22} Assignments of Error II and III are overruled.
 {¶ 23} "IV. Defendant was denied due process of law when the court would not require that the name of the unidentified informant be disclosed."
 {¶ 24} The government enjoys the privilege to withhold the identity of informants that aid in the enforcement of the law.Rovario v. United States (1957), 353 U.S. 53, 59. This privilege, however, is subject to certain limitations. InRovario, the court held that "where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61.
 {¶ 25} The United States Supreme Court declined to adopt a fixed rule with respect to disclosure. Id. at 62. Instead, the court preferred to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." In Roviaro, the court further reasoned that "the desirability of calling [the informant] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than for the government to decide." Id. at 64 (emphasis added).
 {¶ 26} In accordance with Roviaro, the Ohio Supreme Court has held that "the identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to a criminal charge." State v. Williams (1983), 4 Ohio St.3d 74, paragraph one of the syllabus. In Williams, the court focused on the degree of the informant's participation in determining whether the competing interests outlined in Roviaro favored disclosure. Id. at 76.
 {¶ 27} Defendant's reliance on State v. Pope, Cuyahoga App. No. 81321, 2003-Ohio-3647 is misplaced. In that case, police utilized a confidential informant in controlled drug purchases. The informant was the only person present during the drug transaction for which Pope and his co-defendant were charged. Pope maintained the informant's testimony would have benefitted his defense by supporting his contention that the co-defendant was the culpable person. Weighing the factors, we could neither confirm nor dispel his contention and, therefore, remanded for an in-camera hearing to determine the nature of the informant's testimony. That, however, did not necessarily mean that the identity of the informant should or would ultimately be disclosed.
 {¶ 28} Unlike the facts before us in Pope, the involvement of the informant in this case is rather inconsequential. The record here establishes that the informant was essentially a tipster who alerted law enforcement that defendant and co-defendant Rumph purchased a motorcycle using a stolen identity. The tip was independently corroborated through an extensive investigation. The informant's involvement was nominal and served only to explain what prompted the investigation. In other words, the informant's testimony was neither vital nor necessary to establish any element of the crimes charged against defendant.
 {¶ 29} Assignment of Error IV is overruled.
 {¶ 30} "V. Defendant was denied due process of law when the court overruled defendant's motion for judgment of acquittal."
 {¶ 31} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 32} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. We must determine whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 33} Here, defendant challenges his conviction for engaging in a pattern of corrupt activity under R.C. 2923.32, which requires proof that defendant was employed by, or associated with, an enterprise and conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt. R.C.2923.32(A)(1).
 {¶ 34} An "enterprise" is defined as "a group of persons associated in fact although not a legal entity * * *." A "pattern of corrupt activity is "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). "Corrupt activity" includes "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in [certain enumerated offenses, including those for which defendant was indicted]."
 {¶ 35} Contrary to defendant's assertions, there is evidence in the record that, if believed, would support defendant's convictions. For example, testimony establishes that defendant was instrumental in obtaining the false licenses, including maintaining a contact employee at the BMV and supplying information. Banks, defendant's girlfriend, testified that he prompted her involvement in the counterfeit check scheme and that the money was split among defendant and two other co-defendants. There is evidence that defendant participated, helped, assisted, and/or encouraged the others in obtaining the motorcyles with stolen identities.[2] The record amply supports a finding that defendant participated in a pattern of corrupt activity as defined by law. Therefore, the trial court did not err in overruling defendant's motion for acquittal.
 {¶ 36} Assignment of Error V is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and Kilbane, J., concur.
[1] The court permitted amendments concerning the victims' identity in the following counts: counts 12-23 (Advantage Partners changed to Republic Bank), count 77 (Tesco Builders, Advantage Partners, and Midland Title changed to National City Bank, First Merit Bank, Key Bank and Bank One), count 29 (Advantage Partners changed to Republic Bank) and counts 14 (Tesco Builders, Advantage Partners, and Midland Title changed to National City Bank, First Merit Bank, Key Bank and Bank One), 18, 21 (Advantage Partners changed to Republic Bank), 25, 33 (Advantage Partners changed to Republic Bank), 45 (Advantage Partners changed to Republic Bank), and 49 (Advantage Partners changed to Republic Bank).
[2] See State v. Rumph, supra, observing that defendant and co-defendant Crosswhite purchased the morotcycles.