JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Devon Mitchell appeals his kidnapping, compelling prostitution and attempted compelling prostitution convictions and sentence. For the reasons that follow, we affirm.
 {¶ 2} Appellant was charged in a 12-count indictment. Count one charged kidnapping, in violation of R.C. 2905.01(A)(2) and/or (A)(4), alleged to have occurred between April 16 and April 20, 2006. A sexual motivation specification accompanied the count. Counts two, three and four charged compelling prostitution in violation of R.C. 2907.21(A)(1), alleged to have occurred between April 16 and April 17, 2006. Counts five, six and seven charged compelling prostitution in violation of R.C.2907.21(A)(1), alleged to have occurred on April 19, 2006. Count eight charged rape in violation of R.C. 2907.02(A)(2), alleged to have occurred on April 21, 2006. Count nine charged attempted compelling prostitution in violation of R.C. 2923.02 and 2907.21(A)(1), alleged to have occurred on April 22, 2006. Counts 11 and 12[1] charged compelling prostitution in violation of R.C. 2907.21(A)(1), alleged to have occurred between April 17 and April 28, 2006. Count 13 charged engaging in a pattern of corrupt activity in violation of R.C.2923.32(A)(1), alleged to have occurred between April 17 and April 28, 2006.
 {¶ 3} Jane Doe I was identified as the victim in counts one through nine; Jane Doe II was identified as the victim in count 11; and Jane Doe III was identified as the *Page 4 
victim in count 12. The trial court granted the State's pre-trial motion to amend the indictment to name Candy Hopper as Jane Doe I, Alberta Ragland as Jane Doe II, and Monica Washington as Jane Doe III.
 {¶ 4} The case was called for trial on September 14, 2006. The State, however, moved for a continuance on the ground that it had lost contact with one of its victims, Candy Hopper. The defense moved the court to dismiss the case on the grounds that the case had already been set for trial two previous times and that Hopper's failure to show demonstrated her lack of credibility. The court granted the State's request for a continuance, and denied the defense's motion to dismiss.
 {¶ 5} Prior to trial, the State dismissed count eight, rape, without prejudice. At the conclusion of the State's case, the defense made a Crim.R. 29 motion for acquittal. The court granted the motion as to count 13, engaging in a pattern of corrupt activity, and denied it as to the remaining counts. The defense rested without presenting any evidence.
 {¶ 6} The jury found appellant guilty of count one, kidnapping, and not guilty of the attendant sexual motivation specification. Appellant was also found guilty of counts two through seven, compelling prostitution, and count nine, attempted compelling prostitution. He was found not guilty of the compelling prostitution charges in counts 11 and 12. *Page 5 
 {¶ 7} Appellant was sentenced to a 21-year term: eight years on count one, kidnapping; two years each on counts two through seven, compelling prostitution; and one year on count nine, attempted compelling prostitution.
 {¶ 8} At trial, one of the victims, Alberta Ragland, testified that she and appellant had been friends for a number of years, and she referred to him as her "play brother." Ragland testified that she met another one of the victims, Candy Hopper, when they were both living at a women's shelter. According to Ragland, on April 16, 2006, she took Hopper to a friend's house, where they stayed the night. The following day, April 17, she took Hopper to appellant's apartment. According to Ragland, no sexual activity for hire occurred on that day.
 {¶ 9} Ragland testified that the following day, April 18, at appellant's request, she and appellant's girlfriend, Yvette Almore, took Hopper and the third victim in this case, Monica Washington, to the west side of Cleveland to engage in sexual activity for hire. Ragland explained that when they were finished, they returned to Almore's apartment, where she and Almore called appellant and reported that Hopper and Washington did not make any money. Ragland testified that appellant was "hollering" at her and Almore and told them that they could not come back to his apartment without money.
 {¶ 10} According to Ragland, she and the other women eventually went back to appellant's apartment in the early morning hours of April 19, and Hopper and Washington each gave appellant $20; appellant responded "good job." *Page 6 
 {¶ 11} Ragland further testified that, the day before Hopper left appellant's apartment, April 19 or April 20, she escorted her to the west side of Cleveland so Hopper could prostitute herself. Ragland also testified that she saw appellant take Hopper into a room and heard him yell at her about an outfit he had bought for her. Ragland testified that during the encounter, she heard appellant hit Hopper. Appellant was also yelling at Hopper about prostituting herself so that she could earn the money she owed him.
 {¶ 12} Ragland also testified that she and another one of appellant's friends, LaToya Davis, had physically harmed and/or threatened Hopper so she would not leave appellant's apartment and would comply with his demands.
 {¶ 13} Ragland testified that Hopper stayed at appellant's apartment from April 17 through April 21 or April 22, 2006. After that period of time, Hopper ran away. Appellant wanted Hopper returned, so Ragland went to talk with her, and was arrested. According to Ragland, based on appellant's instruction, she initially gave a false statement to the police. She testified that she subsequently gave a partially true statement and then a completely truthful statement.
 {¶ 14} Hopper testified that she met Ragland in the spring of 2006 when they were both staying at a shelter. On April 16, 2006, Easter Sunday, Hopper was supposed to spend the day with her family, but her mother did not pick her up as planned. Hopper testified that she was depressed about not being able to be with her family for Easter, so Ragland invited her to appellant's apartment to "kick it," *Page 7 
which Hopper thought meant smoke and drink. Hopper testified that Ragland told her that appellant was her brother.
 {¶ 15} According to Hopper, after leaving the shelter, she and Ragland went to visit one of Ragland's girlfriends and did not arrive at appellant's apartment until April 17. Hopper testified that upon entering appellant's apartment, Ragland pulled her down and forced her to sit on a couch. Appellant then told Hopper that she "was going to be his new hoe, [she] was going to make money for him, [she] was going to be with different people, different partners." Hopper testified that she was scared. Hopper testified that she was then forced to take a man in the bedroom and have sexual relations with him for money. Hopper testified to numerous other occasions when appellant forced her to engage in sexual activity for hire.
 {¶ 16} Hopper testified that on one occasion, appellant had arranged for her to spend the night with a man for $80. Hopper testified, however, that she did not have sex with the man and that he returned her to the shelter. At the shelter, Hopper told one of her friends about her encounter with appellant, and the friend insisted that Hopper call the police.
 {¶ 17} In his first assignment of error, appellant contends that his speedy trial rights were violated by the trial court overruling his motion to dismiss for the State's inability to proceed to trial. We disagree.
 {¶ 18} Appellant's motion to dismiss was based on the fact that one of the victims, Hopper, was not present when the case was called for trial on September *Page 8 
14, 2006. Appellant argued, therefore, that she lacked credibility and the case against him should be dismissed. Because appellant did not make a speedy trial objection at the trial court level the issue cannot, generally, be raised for the first time on appeal. Cleveland v.Ali, Cuyahoga App. No. 88604, 2007-Ohio-3902, citing State v.Shirey, Summit App. No. 22583, 2006-Ohio-256. "By failing to raise a speedy trial claim except as part of a claim of ineffective assistance of counsel, [defendant] has waived all but plain error." State v.Stewart, Cuyahoga App. No. 86411, 2006-Ohio-813. Here, appellant has not raised an ineffective assistance of counsel claim and, therefore, has waived all but plain error review.
 {¶ 19} R.C. 2945.71 governs the time within which a defendant must be brought to trial and provides in relevant part that:
 {¶ 20} "(C) A person against whom a charge of felony is pending:
 {¶ 21} "* * *
 {¶ 22} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
 {¶ 23} "* * *
 {¶ 24} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section." *Page 9 
 {¶ 25} Appellant contends that because he was indicted on May 10, 2006, arraigned on May 24, 2006, and remained in jail during the entire proceedings, by September 14, 2006, he had been denied his right to a speedy trial. Appellant's argument, however, fails to account for the periods when time was tolled, as allowed by law.
 {¶ 26} In particular, R.C. 2945.72 governs extensions of time for a defendant to be brought to trial and provides:
 {¶ 27} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 28} "* * *
 {¶ 29} "(D) any period of delay occasioned by the neglect or improper act of the accused;
 {¶ 30} "* * *
 {¶ 31} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"
 {¶ 32} Appellant was arrested and arraigned on May 24, 2006. On June 1, 2006, he filed a motion for discovery. The State responded to the request on June 27, 2006, and filed its own request for discovery from appellant on the same date. The State provided supplemental discovery to appellant on July 14, 2006. Appellant *Page 10 
failed to respond to the State's request for discovery, and the case went to trial on September 26, 2006.
 {¶ 33} In State v. Palmer, 112 Ohio St.3d 457, 2007-Ohio-374,860 N.E.2d 1011, the Ohio Supreme Court held that a speedy trial calculation is tolled after a reasonable period of time has elapsed for a defendant to respond to a request by the State for discovery. This court has also held that speedy trial time is tolled while the State awaits responses to its discovery requests. In one case this court held that "[defendant] never responded to the state's demand for discovery which triggered R.C.2945.72(D) `any period of delay occasioned by the neglect or improper act of the accused' and tolled the statute once again. Thus, the delay is due principally to [defendant's] motions and neglect in failing to answer the state's demand for discovery. [Defendant] can hardly ignore a lawful request for information, and then claim that she was not timely tried caused by her own motions and neglect." Village of Chagrin Fallsv. Vartola (Apr. 2, 1987), Cuyahoga App. Nos. 51571 and 51572.
 {¶ 34} In State v. Christopher (Dec. 1, 1988), Cuyahoga App. No. 54331, this court, citing Vartola, supra, explained that the State's request for discovery "tolled the statutory time even further under R.C.2945.72(H) as a `continuance granted other than on the accused's own motion.'" Other courts have agreed that the time continues to be tolled until defendant supplies the requested discovery information. State v.Litteral (Jan 4, 1999), Fayette App. No. CA98-02-002; State v.Stewart *Page 11 
(Sept. 21, 1998), Warren App. No. CA98-03-021; State v. Larsen (Mar. 22, 1995), Medina App. No. C.A. No. O 2363-M.
 {¶ 35} Here, appellant never responded to the State's discovery request. The statutory speedy trial time, therefore, remained tolled until the time of trial, and hence appellant was brought to trial well within the statutory time.[2]
 {¶ 36} Appellant's first assignment of error is overruled.
 {¶ 37} Appellant contends in his second assignment of error that the trial court erred in permitting the State to amend the indictment. In particular, appellant contends that by allowing the State to amend the indictment, he was convicted of crimes different than what were submitted to the grand jury.
 {¶ 38} Crim.R. 7(D) provides in relevant part:
 {¶ 39} "The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment * * * or to cure a variance between the indictment * * * and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by *Page 12 
the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury."
 {¶ 40} In State v. Henley, Cuyahoga App. No. 86591, 2006-Ohio-2728, this court stated that "[i]t is well settled that an amendment to an indictment which changes the name of the victim changes neither the substance nor the identity of the crime charged." (Citations omitted.)
 {¶ 41} As in Henley, the State in this case amended the indictment to specifically identify the victims from their Jane Doe designations. There was no change to the substance of the crime charged. Further, appellant should not have been surprised or prejudiced by the amendment, since the pre-trial discovery provided to him by the State reflected the identity of the victims.
 {¶ 42} Appellant's second assignment of error is overruled.
 {¶ 43} In his third assignment of error, appellant argues that his due process rights were denied because he had to defend against vague allegations. Appellant contends that because "[t]he bill of particulars identified the same time and place for all counts * * * counsel was unable to distinguish which counts relate[d] to the facts heard in the case."
 {¶ 44} Crim.R. 12(C) provides that objections based on defects in the indictment, information, or complaint must be raised before trial. This court has held that "[t]he plain implication of that requirement is that failure to object waives any *Page 13 
error the defect involves." State v. Rivers, Cuyahoga App. No. 83321,2004-Ohio-2566, ¶ 11, citing State v. Hous, Greene App. No. 02CA116,2004-Ohio-666.
 {¶ 45} In State v. Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321, this court held that pursuant to Crim.R. 12(H), a party's failure to timely object to the form of the indictment before trial as required by Crim.R. 12(C), waives all but plain error. Id., citing State v.Sapp, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239. In regard to dates alleged in an indictment, this court held the following inYaacov:
 {¶ 46} "`specificity as to the time and date of an offense is not required in an indictment. State v. Shafer, Cuyahoga App. No. 79758, 2002-Ohio-6632. Under R.C. 2941.03, "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged. Id. at ¶¶ 17-18.'" Id., quoting State v.Bogan, Cuyahoga App. No. 84468, 2005-Ohio-3412.
 {¶ 47} In this case, appellant was indicted on eight counts of compelling prostitution. Counts two, three and four alleged dates of April 16-17, 2006, and identified Jane Doe I as the victim. Counts five, six and seven alleged dates of April 19, 2006, and identified Jane Doe I as the victim. Counts 11 and 12 alleged dates of *Page 14 
April 17-April 28, 2006, and identified Jane Doe II and Jane Doe III, respectively, as the victims. Appellant did not raise any pre-trial objection to the indictment.[3]
 {¶ 48} Accordingly, appellant's third assignment of error is overruled.
 {¶ 49} Appellant contends in his fourth assignment of error that he was denied due process by the State amending the indictment to change its theory of appellant as a principal offender to an aider and abettor. We disagree.
 {¶ 50} R.C. 2923.03(F), governing complicity, provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." Appellant was therefore on notice, by operation of R.C. 2923.03(F), that evidence could be presented that he was either a principal or an aider or abettor. See State v. Smith, Cuyahoga App. No. 86690, 2006-Ohio-3156; State v. Johnson, Cuyahoga App. Nos. 81692 81963, 2003-Ohio-3241; State v. Dotson (1987),35 Ohio App.3d 135, 520 N.E.2d 240. Moreover, the testimony supported either a theory of appellant as a principal offender or as an aider and abettor in the prostitution of Hopper, Ragland and Washington. Appellant's fourth assignment of error is therefore overruled. *Page 15 
 {¶ 51} For his fifth assignment of error, appellant argues that he was denied his constitutional right to cross-examination and confrontation because the trial court limited his inquiry into the plea bargain reached by co-defendant Ragland.
 {¶ 52} After eliciting from Ragland that the State dismissed kidnapping and other charges against her as part of the plea bargain, defense counsel attempted to question Ragland as follows:
 {¶ 53} "Q. And what happened if the prosecutor doesn't find your testimony to be helpful?
 {¶ 54} "* * *
 {¶ 55} "Q. Why didn't you go ahead and get sentenced then?
 {¶ 56} "* * *
 {¶ 57} "Q. You anticipate getting probation here, don't you?"
 {¶ 58} The trial court sustained the State's objection to these questions and appellant now contends that this denied him his right to cross-examination and confrontation.
 {¶ 59} We review the trial court's limitation of cross-examination under an abuse of discretion standard. State v. Gresham, Cuyahoga App. No. 81250, 2003-Ohio-744. In addressing whether the trial court abused its discretion in limiting cross-examination of a co-defendant about his plea bargain, this court held the following in Gresham: *Page 16 
 {¶ 60} "Appellant contends that his right of confrontation requires that he be allowed to fully cross-examine witnesses as to any potential biases that might affect their testimony, including the beneficial effect of a plea agreement. `Because the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness "so that, in the light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction.'" State v.Williams (1988), 61 Ohio App.3d 594, 597, 573 N.E.2d 704 (quoting 3 Weinstein, Evidence (1988), Section 607[03], at 607-27). While we agree that a plea bargain may provide a motive to misrepresent the facts, and therefore is a proper subject of cross-examination, cf. Evid.R. 616(A), the specific extent of the benefit the plea bargain provided to the witness is not relevant to this purpose. The fact that the witnesses agreed to plead guilty to lesser charges and to testify against appellant is sufficient to demonstrate the witness' potential motive to misrepresent the facts. A comparison of the potential penalties under the plea agreement versus the original charges does not add to this demonstration." Gresham at ¶ 11.
 {¶ 61} Here, defense counsel attempted to elicit the potential sentence Ragland would receive for her testimony. Ragland testified that she agreed to plead guilty to lesser charges in exchange for testifying against appellant. That testimony was sufficient to demonstrate Ragland's potential bias. The trial court therefore did *Page 17 
not abuse its discretion in limiting her testimony and the fifth assignment of error is overruled.
 {¶ 62} In his sixth assignment of error, appellant contends that he was denied due process and a fair trial because the trial court allowed improper other bad acts evidence to be admitted and failed to give a limiting instruction.
 {¶ 63} Evid.R. 404(B) governs evidence of other crimes, wrongs, or acts, and provides:
 {¶ 64} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 65} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus.
 {¶ 66} Appellant argues that the following testimony of Ragland was improper:
 {¶ 67} "Q. Now, did you want to go prostituting yourself?
 {¶ 68} "A. No.
 {¶ 69} "Q. Why did you?
 {¶ 70} "A. Because he asked me do it and I was afraid if I would have said no.
 {¶ 71} "Q. Why were you afraid? *Page 18 
 {¶ 72} "A. Because I did see him-
 {¶ 73} "[Defense counsel]: Objection.
 {¶ 74} "The Court: Overruled.
 {¶ 75} "A. I had seen him hit on his girlfriend."
 {¶ 76} The trial court did not abuse its discretion by allowing this testimony. The testimony was elicited to show why Ragland was scared of appellant if she did not follow his commands.
 {¶ 77} Appellant further argues that the following testimony of Hopper was also improper:
 {¶ 78} "Q. Back then, who was giving you the alcohol and the wet?
 {¶ 79} "A. [Appellant.]
 {¶ 80} "* * *
 {¶ 81} "Q. And did [appellant] consume these substances with you?
 {¶ 82} "A. Yes."
 {¶ 83} Appellant did not object to this testimony. Failure to object to the other acts testimony waives all but plain error on appeal.State v. Bays, 87 Ohio St.3d 15, 26-27, 1999-Ohio-216, 716 N.E.2d 1126. We do not find plain error in allowing this testimony, especially in light of the other overwhelming evidence of appellant's guilt.
 {¶ 84} Moreover, appellant did not request a limiting instruction in regard to either Ragland or Hopper's testimony. The Ohio Supreme Court has held that a *Page 19 
"[defendant's failure to request [a limiting] instruction at trial waive[s] any error in the trial court's failure to give such instructions." State v. Grant (1993), 67 Ohio St.3d 464, 472,620 N.E.2d 50.
 {¶ 85} This court has similarly held that: "[t]he failure to request the instructions did not constitute plain error because the absence of such instructions did not affect the jury's verdict and nothing suggests the jury used this evidence to convict the defendant on the theory that he was a bad person. Id. at 472, 620 N.E.2d 50. The court in State v.Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, held that error in the admission of other acts testimony is harmless when there is no reasonable probability that the testimony contributed to the accused's conviction." State v. Bruno, Cuyahoga App. No. 77202, 2001-Ohio-4227.
 {¶ 86} Upon review, we find that the lack of a limiting instruction did not constitute plain error. Because there was no reasonable probability that the testimony contributed to appellant's conviction. Appellant's sixth assignment of error is therefore overruled.
 {¶ 87} In his seventh assignment of error, appellant maintains that he was denied due process because the trial court did not instruct the jury concerning the fact that guilty pleas by the co-defendants could not be considered as evidence of appellant's guilt.
 {¶ 88} Appellant did not object to the court's lack of instruction, however, and, therefore, has waived all but plain error. State v.Smith, 148 Ohio App. 3d 274, *Page 20 2002-Ohio-3114, 722 N.E.2d 1225. In Smith, this court stated the following in regard to the admissibility of a co-defendant's guilty plea:
 {¶ 89} "It is a long-standing rule that information that a co-defendant has pleaded guilty to or has been convicted of an offense stemming from the same facts or circumstances forming the basis of a prosecution against another is inadmissible as proof against the other.See Kazer v. Ohio (1831), 5 Ohio 280, 281-282. This is because evidence that another pleaded guilty to or was convicted of an offense stemming from the same facts or circumstances is not necessarily evidence that the other committed the same offense.
 {¶ 90} "* * *
 {¶ 91} "This is not to say that evidence of a co-defendant's guilty plea is never admissible. In some circumstances, evidence of a co-defendant's guilty plea may go to the jury if its use is limited to other purposes such as impeachment, see, e.g., United States v.King (5th Cir. 1974), 505 F.2d 602, or to show that the state has nothing to hide in its plea agreements. See, e.g., United States v.Hilton (C.A.11, 1985), 772 F.2d 783, 787. See, generally, Carlson, Evidentiary Issues in Criminal Cases: Admissibility of Plea Agreements on Direct Examination — Are There Any Limits? (2001), 55 U.Miami L.R. 707, 712-715. The test most often used to determine the admissibility of a co-defendant's guilty plea was set forth in United States v.Casto (C.A.5, 1989), 889 F.2d 562, 567, and requires the court to consider (1) whether a limiting instruction was given, (2) whether there was a proper purpose *Page 21 
in introducing the fact of the guilty plea, (3) whether the plea was improperly emphasized or used as substantive evidence of guilt, and (4) whether the introduction of the plea was invited by defense counsel."Smith at 275-276.
 {¶ 92} Here, while the trial court did not give a limiting instruction, information about the co-defendants' pleas was not offered by the State as substantive evidence. The pleas were mentioned by the State in its opening statement; it is well established, however, that opening statements are not evidence and the jury was so instructed. Further, it was appellant who cross-examined the co-defendants about their pleas and thus he invited the error.
 {¶ 93} While we are aware that it is preferable for a trial court to give a limiting instruction when there has been mention that a co-defendant has pled guilty, under a plain error review, and given the fact that appellant invited the error, we do not find that the error was obvious and clearly affected the outcome of the trial. See State v.Nicholas (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225. The seventh assignment of error is overruled.
 {¶ 94} In his eighth and ninth assignments of error, appellant contends that the trial court erred by overruling his Crim.R. 29 motion for acquittal. We disagree.
 {¶ 95} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such *Page 22 
evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v. Watts, Cuyahoga App. No. 82601, 2003-Ohio-6480, citing State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492. "Sufficiency is a test of adequacy." State v.Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 96} Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492. "The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts."State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 97} R.C. 2905.01(A)(2) and (A)(4), governing kidnapping, provide:
 {¶ 98} "(A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person for any of the following purposes:
 {¶ 99} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 100} "* * * *Page 23 
 {¶ 101} "(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will[.]"
 {¶ 102} R.C. 2907.21(A)(1), governing compelling prostitution, provides:
 {¶ 103} "(A) No person shall knowingly do any of the following:
 {¶ 104} "(1) Compel another to engage in sexual activity for hire[.]"
 {¶ 105} R.C. 2923.02 governs attempt and provides:
 {¶ 106} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 107} The evidence at trial demonstrated that on Easter Sunday Ragland told Hopper, who was depressed about not seeing her family, that they would go to her brother's house to "kick it." Ragland took Hopper to appellant's apartment, however, where she was forced to commit felonies. Hopper testified that she was not allowed to leave appellant's apartment and was restrained of her liberty by force. Indeed, Ragland testified that she would not allow Hopper to leave because she was scared of what appellant would do to her if she did. This evidence was sufficient evidence of kidnapping and, thus, the trial court did not err in denying appellant's Crim.R. 29 motion as to that count.
 {¶ 108} In regard to the compelling prostitution charges, we are not persuaded by appellant's argument that because he never hit or harmed Hopper, there was insufficient evidence to sustain his convictions. Hopper testified that when *Page 24 
she met appellant on April 17, 2006, he told her that she was going to be his new "hoe" and make money for him. Appellant then forced Hopper to have sexual relations for money with various men on various occasions. The money she earned was turned over to appellant.
 {¶ 109} Based on the testimony, there was sufficient evidence to sustain convictions for compelling prostitution and attempted compelling prostitution, and the trial court properly denied appellant's Crim.R. 29 motion for acquittal.
 {¶ 110} Appellant's eighth and ninth assignments of error are overruled.
 {¶ 111} For his tenth and final assignment of error, appellant argues that he was denied due process and subjected to cruel and unusual punishment because the trial court sentenced him to a 21-year sentence.
 {¶ 112} The Sixth Appellate District recently addressed the issue of cruel and unusual punishment and held:
 {¶ 113} "Eighth Amendment violations are rare. State v.Weitbrecht, 86 Ohio St.3d 368, 371, 1999-Ohio-113, 715 N.E.2d 167, citing McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 203 N.E.2d 334. Generally, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment. McDougle at 69; andState v. Russell (Mar. 31, 1997), 6th Dist. No. L-96-335. The Ohio Supreme Court has held that punishments which are prohibited by the Eighth Amendment `are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so *Page 25 
disproportionate to the offense as to shock the moral sense of the community.' McDougle at 69. See, also, State v. Chaffin (1972),30 Ohio St.2d 13, 282 N.E.2d 46, paragraph three of the syllabus. `Cases in which cruel and unusual punishments have been found, are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person' and `almost unthinkable in a civilized society.' McDougle at 69-70." State v. Dombrowsky, Lucas App. No. L-06-1234, 2007-Ohio-1194.
 {¶ 114} Appellant's 21-year sentence falls within the range set forth in R.C. 2929.14, and can not be considered cruel and unusual. Although appellant's counsel argued at oral argument that appellant's sentence was excessive when compared to crimes he argues are more serious, that issue was neither raised below nor briefed on appeal and we, therefore, decline to consider it. Appellant's tenth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 26 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and MARY J. BOYLE, J., CONCUR
[1] Count ten related to a co-defendant.
[2] There were only eight untolled jail days.
[3] Although counts three and four and counts six and seven were "copycat" indictments, appellant was found guilty of all four counts. There was no split verdict and hence issues of double jeopardy are not extant here. *Page 1