JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Mark Wade (Wade), appeals the judgment of the Cuyahoga County Court of Common Pleas in Case No. CR-491312 that convicted him of one count of receiving stolen property (motor vehicle), in violation of R.C. 2913.51, after a jury trial. The jury returned a verdict of not guilty as to the second count of the two-count indictment. After a review of the record and for the reasons set forth below, we affirm.
 {¶ 2} According to the parties' appellate briefs, Wade was originally indicted for these two offenses in December of 2005, Case No. CR-474588. Purportedly, Wade entered a plea of not guilty to the charges in that case. The case was dismissed on March 6, 2006, without prejudice, when the victim, William Kennedy (Kennedy), failed to appear at trial. As we do not have the record of that case before us, nor a certified copy of the docket or otherwise authenticated copy of the filings in that case, we are only able to state what purportedly occurred in the initial prosecution.
 {¶ 3} It is clear from the record in the case sub judice, CR-491312, that Wade had been arrested for these offenses on November 3, 2005. We are able to ascertain from the record that Wade was released from the Solon Police Department on November 4, 2005, after posting bond. (Tr. 204, 205.)
 {¶ 4} On January 25, 2007, Wade was reindicted on the same charges in case CR-491312. Wade was arraigned on February 8, 2007, at which time he pleaded not guilty and posted a $5,000 personal bond set at arraignment. The initial pretrial in this second case was held on February 20, 2007, at which time a trial date of April 16, 2007, was set. A pretrial *Page 4 
was held on March 6, 2007, with a new attorney for Wade making an appearance on the record. The pretrial was continued to March 20, 2007, at the request of the defendant. The trial remained set for April 16, 2007.
 {¶ 5} On April 4, 2007, Wade filed a motion to dismiss for lack of speedy trial and a motion to suppress. Both were denied by the trial court at the April 16, 2007 hearing. The trial court immediately proceeded to impanel a jury. The case continued on April 17, 2007, at which time the trial court denied Wade's motion for judgment of acquittal at the close of the State's case made pursuant to Crim. R. 29. On April 18, 2007, the jury heard the instructions of the court, deliberated, and returned a verdict of guilty on the first count of receiving stolen property.
 {¶ 6} This matter was referred for a presentence investigation report and, thereafter, on May 22, 2007, Wade was sentenced to a prison term of one year, with three years of postrelease control.
 {¶ 7} The record in the case sub judice reveals that in October 2005, Kennedy was operating a used car lot in Cleveland, Ohio. He was driving his 1998 Ford, F-150 pickup truck when its brakes malfunctioned. Kennedy left the truck at his friend's auto repair shop over the weekend so it would be repaired when the shop reopened on Monday. When Wade called his friend on Monday to check on his truck, the friend indicated it was not parked at his lot.
 {¶ 8} Sometime thereafter, Kennedy called the Cleveland police and reported his pickup truck stolen. Approximately three weeks after first reporting his truck stolen, *Page 5 
Kennedy contacted tow truck operators in the area requesting them to be on the lookout for his truck.
 {¶ 9} One of the tow truck operators he called was his longtime friend, Wade. Kennedy knew Wade from the car repair business for over 29 years and had utilized Wade's towing services in his own used car business for many years. Kennedy testified that he had given Wade permission to recover his vehicle if he came upon it. (Tr. 113, 118.) Approximately one week later, on November 3, 2005, Kennedy received a phone call from the Solon police reporting that his truck had been recovered.
 {¶ 10} On November 4, 2005, while at the police station, Kennedy and Wade briefly saw each other in the lobby of the police department. Wade was being released on bond after being arrested for receiving stolen property. (Tr. 204.) Wade did not inform Kennedy that he had recovered his truck before, during, or after their brief encounter at the police station.
 {¶ 11} Kennedy testified that Wade knew all three phone numbers to Kennedy's used car lot, as well as his home and his cell phone numbers. Furthermore, during the almost 30-year friendship, Wade never had any difficulty reaching Kennedy to communicate with him.
 {¶ 12} Solon police discovered Kennedy's missing truck at Wade's residence on November 3, 2005, by happenstance. In the early morning of that day, Solon police officer Reginald Willis (Willis) received a radio dispatch to respond to Wade's residence regarding a vehicle that had been backed into a ditch. Upon arrival, Willis saw the vehicle and a woman near the vehicle who later was determined to be its driver. She was subsequently arrested for OVI. Originally, she informed Willis that she had not been driving the vehicle and that her *Page 6 
friend, "Robert," had been driving. When Officer Willis asked her where "Robert" lived, she pointed up the driveway.
 {¶ 13} Sergeant Steven Galaska (Galaska) and Patrolman Thomas Terwilliger (Terwilliger) arrived at this time as backup. Galaska and Terwilliger walked up the driveway to the residence in order to determine if there was anyone at the house named "Robert" and to see if someone inside the house had in fact been driving the vehicle that apparently had backed into a ditch. They observed one vehicle, a small S-10 pickup truck, approximately 15 to 20 feet to the west of the driveway, near the house. Galaska called the license plate number into dispatch and found that the plate on the pickup truck belonged to a Pontiac that had been reported stolen.
 {¶ 14} Galaska and Terwilliger then knocked on the front door of the residence. Wade's wife, Marilyn Harley (Marilyn), answered the door. The officers explained that they were investigating the vehicle in the ditch at the end of the driveway and that they were looking for a male named "Robert." She immediately called for her son, Nathaniel Harley (Harley). Harley came to the door and stated that the woman had been the driver of the car backed into the ditch. He explained that he and the woman had been out drinking. She brought him home and drove the car into the ditch as she was backing out of the driveway. He further stated that the S-10 pickup truck just off the driveway belonged to Wade, his father.
 {¶ 15} Information regarding the license plates on the S-10 pickup truck was noted for further investigation. Later that day, Solon police officers Steven Rose (Rose), Robert Soltis *Page 7 
(Soltis) and Joseph Vito (Vito) went to the Harley-Wade residence to further investigate and, upon arrival, ran the license plate on the S-10 pickup truck, finding that the plates were stolen. The officers also observed a number of other vehicles lined up bumper-to-bumper in a western driveway. The vehicles appeared to the officers to be abandoned or scrap vehicles. Some had license plates on them, others did not.
 {¶ 16} Marilyn indicated to the officers that Wade would be returning home soon. While waiting for Wade, they began to check the license plates and VIN numbers on other vehicles located on the property. The officers could not see into the garage because the doors were closed and the windows were covered or painted over.
 {¶ 17} When Wade arrived home, Rose and Soltis told him that the plates on the S-10 pickup truck were registered to a stolen Pontiac. Wade claimed he owned the Pontiac to which the plates in question were registered. He explained that he had purchased the Pontiac to scrap it, and that it had already been salvaged. When asked if the Pontiac was inside the garage, Wade responded that it was not. The officers informed him that they wanted to look inside his garage to see if it contained the stolen Pontiac in question. Wade maintained at that time, and thereafter, that he had a title to the Pontiac which he had scrapped, but he never produced the title for the police. However, Wade did proffer a title to the Pontiac at trial as a defense exhibit.
 {¶ 18} As requested by the officers, Wade opened the right garage door. The officers observed that behind the closed left garage door was a 1998 Ford, F-150 pickup truck. Cardboard was covering the front of the truck. Other items were in the truck bed, and the *Page 8 
truck was surrounded by lawnmowers and a snowblower. A snowblower and a lawnmower were positioned between the rear of the truck and the closed left garage door. A lawnmower with cardboard boxes on top of it was between the truck and a Chrysler, belonging to Marilyn, which was parked behind the right garage door.
 {¶ 19} The missing F-150 pickup truck was located directly behind a cord of wood, which was stacked outside the closed left garage door, preventing access into that part of the garage from the outside. When Rose asked Wade what the truck was doing in the garage, Wade explained that he knew the F-150 pickup truck was stolen because he had been hired to recover it. Rose was skeptical about Wade's explanation because of the discovery of stolen plates at his residence on a previous occasion.
 {¶ 20} Rose ran the license plate number of the F-150 pickup truck through dispatch and learned that the truck had been reported stolen and belonged to William Kennedy.
 {¶ 21} After the truck was removed from the garage, Rose and Soltis noticed radios and auto parts in the garage, which were removed by the officers along with the F-150 truck. These items, along with other items removed from the house, led Rose to conclude that Wade may have been operating an illegal chop shop, a "[p]lace where someone would take stolen cars, dismantle them, [and] sell off the various vehicle parts."
 {¶ 22} Wade was arrested and Kennedy's truck was towed to the Solon impound lot.
 {¶ 23} Rose and Soltis testified that after Wade was advised of his constitutional rights, he offered oral and written statements attempting to support his contention that his possession of the F-150 pickup truck was lawful. Wade claimed that he knew the vehicle *Page 9 
was stolen, and stated that he found the vehicle on I-271. He was not able to provide the officers with a specific date or time that he picked up the F-150, and he was unable to tell them how long he had the truck at his house. He had no answer to the officers' question as to whether he contacted the owner of the F-150 once he had picked it up. He said the owner was William Kennedy, but he had no contact with Kennedy at the time of the police interview at the station after his arrest.
 {¶ 24} Rose testified that when Wade was being released from the Solon Police Department on November 4, 2005, Kennedy happened to be in the lobby of the police station. While Kennedy was walking toward Rose, Kennedy said something to Wade. When Rose later sat down in the interview room with Kennedy, he informed him that Wade was the individual that had his F-150 pickup truck inside a garage on his property. Kennedy was "taken aback by that."
 {¶ 25} Wade appeals and raises three assignments of error for our review. The first two assignments of error will be addressed together.
ASSIGNMENT OF ERROR NUMBER ONE
 "The evidence was insufficient to sustain a finding of guilty as to receiving stolen property."
ASSIGNMENT OF ERROR NUMBER TWO
 "The verdict was against the manifest weight of the evidence."
 {¶ 26} In his first assignment of error, Wade argues that the trial court erred in denying his motion for acquittal because his conviction was not supported by sufficient *Page 10 
evidence. In his second assignment of error, he contends that his conviction was against the manifest weight of the evidence. Wade's discussion as to both of these assignments is directed to the jury verdict finding him guilty of receiving stolen property, namely, Kennedy's F-150 pickup truck. As these arguments involve different standards of review but involve a review of the same evidence, we discuss them together.
 {¶ 27} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, citing Tibbs v. Florida (1982),457 U.S. 31, 102 S.Ct. 2211.
 {¶ 28} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass
(1967), 10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the *Page 11 
crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259; Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 29} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. City ofCleveland (1948), 150 Ohio St. 303, 345.
 {¶ 30} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held inTibbs, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated inTibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 31} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving *Page 12 
conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Martin at 720.
 {¶ 32} The essential elements of receiving stolen property are set forth in R.C. 2913.51 as follows:
 "(A) No person shall receive, retain or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 33} A "theft offense" is defined as a violation of any revised code section listed in R.C. 2913.01(K)(1), including R.C. 2913.02. See Statev. Asberry, Franklin App. No. 04AP-1113, 2005-Ohio-4547 at ¶ 9. In the case sub judice, the jury was instructed pursuant to R.C. 2913.02, that "a theft offense occurs when property is knowingly obtained or control is exerted over it without the consent of the owner, or person authorized to give consent, with purpose to deprive the owner of said property."
 {¶ 34} Although referencing and differentiating the two distinct legal standards, Wade sets forth the same reasons as to both challenges when arguing that his conviction should be reversed. First, he argues that the conviction was not warranted because Kennedy gave full consent to Wade to recover the F-150 pickup. Second, he argues that the conviction was not warranted because Kennedy admitted that messages from Wade could have been left on his answering machine or that calls could have gone unanswered. Lastly, he argues that the conviction should be reversed under both standards because the State never produced any evidence as to how long Wade had been in possession of the pickup truck. *Page 13 
 {¶ 35} With regard to both challenges, Wade's argument that there was evidence that Kennedy gave his full consent to Wade is incomplete and not determinative. In the case sub judice, the record is replete with evidence demonstrating that Wade purposely deprived Kennedy of his pickup truck by knowingly obtaining or exerting control over it beyond the scope of the express or implied consent of Kennedy.
 {¶ 36} Kennedy gave express or implied permission to Wade to find his truck and return it to him. Wade's statement to the police that he was going to return the retrieved vehicle to Kennedy is belied by the physical location and the surroundings in which the truck was discovered. Kennedy's permission to Wade, express or implied, did not encompass Wade keeping the truck in an enclosed garage with darkened windows and a cord of wood stacked in front of it for any period of time.
 {¶ 37} The jury viewed photographs and heard the officers' testimony describing the location of the truck and its condition of being surrounded with cardboard and machinery. Given this evidence, the jury did not believe Wade's protestations to the officers that he intended to return the pickup truck. The location of the truck and its condition of being surrounded with cardboard and machinery were inconsistent with Kennedy's request to Wade to locate and return the truck to him as soon as possible. Moreover, the manner in which the truck was secreted in Wade' s garage, behind a cord of stacked wood, did not give credence to any claims that the truck was only in the garage for a short period of time or that it was ready to be returned to its owner any time soon. The weight to be given the evidence and the *Page 14 
credibility of the witnesses are primarily matters for the trier of fact, and we will not disturb the jury's findings. See DeHass
at paragraph one of the syllabus.
 {¶ 38} Wade's second argument that his conviction was not warranted as to both the sufficiency and manifest weight challenges because Kennedy stated that messages from Wade could have been left on his answering machine or that calls could have gone unanswered is unfounded. "A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony." Asberry, citingState v. Kendall (2001), Franklin App. No. 00AP-1098, 2002-Ohio-3557. Kennedy also testified he was never informed by Wade that he had recovered his pickup truck, despite the fact that he never had difficulty in reaching Kennedy in their almost 30-year friendship. We cannot resolve evidentiary conflicts in Wade's favor and substitute our evaluation of witness' credibility for that of the jury's.
 "It is well established that an appellate court cannot evaluate the credibility of witnesses on a review for evidentiary sufficiency. The weight to be given the evidence and credibility of the witnesses are primarily for the trier of fact. Furthermore, the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility. Thus, in reviewing the legal sufficiency of evidence to support a jury verdict, it is the minds of the jurors rather than a reviewing court that must be convinced." State v. Humphrey, Cuyahoga App. No. 89476, 2008-Ohio-685. (Internal citations omitted.)
 {¶ 39} Wade's third argument with regard to both challenges is that the State did not prove how long Wade had control over the truck. We also find this argument to be unpersuasive. Receiving stolen property does not require length of possession as an element. There was no requirement for the State to prove a specified period of time during which an *Page 15 
offender exercises dominion and control over property of another outside their express or implied consent. The State only had to prove Wade had control over Kennedy's pickup truck for some period of time, however short or long, during which his possession was inconsistent with the express or implied consent given by its owner. Kennedy requested Wade to find the truck only for the purpose of returning it to him. Wade stored the truck in his garage in such a fashion that the jury did not believe Wade intended to return it to Kennedy.
 {¶ 40} As we recently stated in State v. Friedlander, Cuyahoga App. No. 90084, 2008-Ohio-2812, "A court should reverse a conviction as against the manifest weight of the evidence only in the most `exceptional case in which the evidence weighs heavily against the conviction.' A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." Id., quoting Martin at paragraph three of syllabus.
 {¶ 41} After examining the entire record, weighing the evidence, and considering the credibility of the witnesses, we do not find that the jury lost its way in finding Wade guilty of receiving stolen property. Given this determination that the conviction was not against the manifest weight of the evidence, and mindful of the standards ofJenks, it follows that there was sufficient evidence to support this criminal conviction. For these reasons, we overrule Wade's first and second assignments of error. ASSIGNMENT OF ERROR NUMBER THREE
 "Appellant was denied constitutional due process when he was prejudiced by the State's unjustified pre-indictment delay and violation of speedy trial provisions." *Page 16 
 {¶ 42} In his third assignment of error, Wade contends that the trial court failed to comply with constitutional and statutory rights to a speedy trial.
 {¶ 43} In reviewing this last assignment of error, we first must examine whether the preindictment delay between the date of the offense and the date of reindictment violated Wade's right to due process under the facts of this case. The delay between the dismissal of CR-474588 and Wade's reindictment in CR-491312 was purportedly 10 months and 19 days, and the delay between the date of offense and the reindictment in the later case was 14 months.
 {¶ 44} As recently observed in State v. Davis, Mahoning App. No. 05 MA 235, 2007-Ohio-7216, "very different rules apply depending on which statutory or constitutional rights are being asserted, and based on whether the delay occurs before or after the defendant is indicted." Id. at ¶ 14. As did the appellant in Davis, Wade in his assignment of error asserts, in part, a due process violation. "The United States Supreme Court has determined that the due process clauses of the Fifth and Fourteenth Amendments have a limited role to play in protecting against oppressive preindictment delay. Furthermore, `proof of prejudice is generally a necessary but not sufficient element of a due process claim * * *.'" Id., quoting United States v. Lovasco (1977), 431 U.S. 783, 789.
 {¶ 45} With regard to a due process challenge under the Ohio Constitution, the Supreme Court of Ohio has adopted the test set forth in Barker v. Wingo, (1972), 407 U.S. 514, in determining if an individual's speedy trial rights have been denied. Id. at ¶ 20, citing *Page 17 State v. Selvage, 80 Ohio St.3d 465, 1997-Ohio-287; State v.Behymer (1992), 80 Ohio App.3d 791. The fourth prong of theWingo test is whether the defendant suffered prejudice from the delay.
 "Courts reviewing a decision on a motion to dismiss for preindictment delay accord deference to the lower court's findings of fact but engage in a de novo review of the lower court's application of those facts to the law. State v. Henley, Cuyahoga App. No. 86591, 2006-Ohio-2728. The statute of limitations provides the `primary guarantee against bringing overly stale criminal charges.' Id., citing United States v. Lovasco (1977), 431 U.S. 783.
 * * *
 Nevertheless, dismissal of charges may be required when there has been an unjustifiable preindictment delay. Henley, supra. `To warrant dismissal on the basis of preindictment delay, a defendant must present evidence establishing substantial prejudice. Once the defendant fulfills that burden, the state has the burden of producing evidence of a justifiable reason for the delay.' State v. Walls, 96 Ohio St.3d 437, 2002-Ohio-5059. `The determination of "actual prejudice" involves `a delicate judgment based on the circumstances of each case."' Id. at ¶ 52, quoting United States v. Marion (1971), 404 U.S. 307, 325. A court must consider `the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.' Id. `In proving substantial prejudice, the defendant must show the exculpatory value of the alleged missing evidence.' State v. Gulley (Dec. 20, 1999), Butler App. No. CA99-02-004. Further, `prejudice may not be presumed from a lengthy delay.' Id." State v. Copeland, Cuyahoga App. No. 89455, 2008-Ohio-234.
 {¶ 46} In the instant case there was no more than a 14-month delay between the crime and the reindictment, and the statute of limitations governing receiving stolen property is six years pursuant to R.C. 2901.13(A)(3)(a). The reindictment was well within the statute of limitations. Moreover, Wade has not demonstrated any prejudice from the delay caused by the reindictment. Wade is not able to demonstrate the exculpatory value of any alleged missing evidence. *Page 18 
 {¶ 47} The woman who was charged with OVI outside the Wade home on November 3, 2005, was not subpoenaed by the defense, and therefore, Wade cannot speculate that "she could have shed light as to whether she in fact told police officers that `Robert' was the driver of the car in the ditch and that he was in the house in the adjacent property." In the case sub judice, Wade is not able to allege any prejudice other than arguing a general presumption of prejudice based on no more than a 14-month delay. Prejudice is not presumed from mere delay.Copeland at ¶ 14. Wade has not shown any evidence of prejudice, and therefore, he has not met his burden of presenting evidence of substantial prejudice under either a federal or state constitutional challenge.
 {¶ 48} As stated in State v. Robinson, Lucas App. No. L-06-1182,2008-Ohio-3498,
 "To prove actual prejudice, a defendant must show, by concrete proof, the exculpatory value of any alleged missing evidence. See, State v. Gulley (Dec. 20, 1999), 12th Dist. No. CA99-02-004, 1999 Ohio App. LEXIS 6091, citing United States v. Doerr (C.A.7, 1989), 886 F.2d 944, 964, * * *. In other words, a defendant must show how lost witnesses and physical evidence would have proven the defendant's asserted defense. See State v. Gulley, supra; State v. Davis, 7th Dist. No. 05 MA 235, 2007-Ohio-7216, ¶ 17
(`Without proof of prejudice, meaning something which adversely affects [a defendant's] ability to defend himself at trial, there is no due process violation for preindictment delay in prosecution.'). A showing based on mere speculation will not be found sufficient. See State v. Gulley, supra; * * *. In addition, `[prejudice will not be found due to the lack of non-exculpatory evidence.' State v. Gulley, supra." Id. at ¶ 121.
 {¶ 49} Having determined that there was no preindictment delay, we now review appellant's claim that there was a statutory violation of his speedy trial rights under R.C. 2945.71. *Page 19 
 {¶ 50} We stated the following in State v. Blackshaw, Cuyahoga App. No. 85432, 2005-Ohio-5203:
 "R.C. 2945.71(C)(2) requires the State to bring the accused to trial within 270 days after his arrest. `Each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days.' R.C. 2945.71(E). R.C. 2945.72 provides various grounds for extending the statutory time limits. Specifically, R.C. 2945.72(E) and (H) permit extension of the time for the following:
 * * *
 `(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;'
 `For purposes of computing how much time has run against the state under R.C. 2945.71 et seq., the time period between the dismissal without prejudice of an original indictment and the filing of a subsequent indictment, premised upon the same facts as alleged in the original indictment, shall not be counted unless the defendant is held in jail or released on bail pursuant to Crim. R. 12(I).' State v. Broughton (1991), 62 Ohio St.3d 253, 581 N.E.2d 541, paragraph one of the syllabus. In the case of re-indictment, the time of defendant's arrest on the subsequent indictment resumes the running of the speedy-trial time period. Id. at paragraph 2 of the syllabus."
 {¶ 51} The Ohio Supreme Court recently held in State v.Blackburn, 118 Ohio St.3d 163, 2008-Ohio-1823, that "[i]n calculating the time within which a criminal defendant must be brought to trial under R.C. 2945.71, periods of delay resulting from motions filed by the defendant in a previous case also apply in subsequent case in which there are different charges based on the same underlying facts and circumstances of the previous case." Id. at syllabus. *Page 20 
 {¶ 52} Wade must first establish a prima facie case for violation of his speedy trial rights. As we stated in State v. Craig, Cuyahoga App. No. 88039, 2007-Ohio-1834, "[t]he Ohio speedy trial statute constitutes a rational effort to enforce the constitutional right to a public speedy trial of an accused charged * * * and shall be strictly enforced by the courts of this state. Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72." Id. at ¶ 21. (Internal citations omitted.)
 {¶ 53} A trial court may not take judicial notice of prior proceedings in the trial court, but may only take judicial notice of the proceedings in the immediate case, even when the separate actions involve the same parties and were before the same trial court. The State ex rel. Everhartv. Mclntosh, 115 Ohio St.3d 195, 2007-Ohio-4798.
 {¶ 54} Wade did not include the record of his initial case (CR-474588) in the instant appeal. He did not submit a certified copy of the docket or otherwise authenticated filings in the initial case in support of his motion to dismiss. Given this fact, Wade cannot establish that the statutory time limit of 270 days, as a total amount of days in both cases, has expired. When reviewing Wade's general argument regarding a statutory violation of speedy trial as subsumed in his third assignment of error, we are only able to ascertain the number of days attributable to the second prosecution of the receiving stolen property offenses, as we only have the record in the case sub judice. We cannot determine with certainty the number of days attributable to the first case. However, even accepting the dates he proposes without any continuances-143 plus 81 totals only 224 days. *Page 21 
 {¶ 55} Likewise, for the same reasons, lack of record and failure to meet the burden of establishing a prima facie case of violation of the speedy trial statute on the part of Wade, we are unable to ascertain with certainty the number of days that tolled the speedy trial time in the initial prosecution. We are only able to determine the number of days tolled in the case sub judice because we have only that record before us.
 {¶ 56} For the foregoing reasons, the third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 COLLEEN CONWAY COONEY, P.J., and KENNETH A. ROCCO, J., CONCUR *Page 1