[Cite as *State v. Bethel*, 2025-Ohio-4755.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 114722 |
| JU'VEIL BETHEL, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 16, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676907-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mason McCarthy, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Noelle A. Powell-Sacks, Assistant Public Defender, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} Appellant Ju'Veil Bethel ("Bethel" a.k.a "Veil") brings this appeal challenging his conviction for felonious assault with three- and five-year firearm specifications. We affirm the jury's verdicts.

**Facts and Procedural History**

{¶ 2} This matter arises from a shooting that occurred on March 6, 2022 at a gas station parking lot in Warrensville Heights.

{¶ 3} On December 19, 2022, as a result of the investigation into the shooting, Bethel and his brother Arthur Bethel ("Arthur" a.k.a. "Inky") were charged with four counts of felonious assault with accompanying one-, three- and five-year firearm specifications and one count each of having a weapon while under disability.[1]

{¶ 4} The case proceeded to trial where Bethel and Arthur were tried as codefendants regarding the felonious assault counts. Bethel and Arthur waived their right to a jury trial as it pertained to having a weapon while under a disability, which was tried to the court.

{¶ 5} At trial, the State presented testimony from multiple police officers, witnesses and the victims, as well as dozens of exhibits, including video-surveillance footage.

{¶ 6} Despite some inconsistent and varying testimony among the witnesses, the following facts were established at trial and were detailed in great length in *Bethel* 1:

> On the night in question, sometime after 4:00 a.m., former Shaker Heights Police Officer Alexandria Starcher was in her patrol car at the intersection of Lee Road and Chagrin Boulevard. While she was waiting at a traffic light, a blue Nissan Kick with a female driver stopped by her cruiser. The windows of the vehicle were rolled down, and the female

---

[1] Arthur Bethel appealed his convictions to this court in *State v. Bethel*, 2024-Ohio-1365 (8th Dist.) ("*Bethel* 1").

driver and male passenger were screaming that "he" had been shot and that they needed help.

Ptl. Starcher exited her vehicle and went to the blue car. The driver opened the rear driver's side door, and Ptl. Starcher observed a small, young boy "hunkered down" in the seat. He told her that he needed help and that his chest hurt. The boy, J.P., was ten years old at the time.

Backup arrived on the scene, and Ptl. Starcher and another officer removed the boy from the vehicle. Ptl. Starcher had noticed that J.P. had blood on him, so the officers removed his shirt and pants to look for any bullet hole wounds. Ptl. Starcher observed two circular holes on J.P. Her partner placed a chest seal over the holes to prevent any further blood loss. Once EMS arrived, they took J.P. in the ambulance to the hospital. Ultimately, he recovered but had been shot in the back, shoulder, and leg. He was in the hospital for a week and had to relearn how to walk because of having been shot in the leg.

Warrensville Heights police were called to the scene after Ptl. Starcher learned that the shooting had occurred in Warrensville Heights. Ptl. Starcher took photographs of the blue vehicle and observed "more than a handful" of bullet holes on the outside.

Warrensville Heights Police Sergeant Jerome Thomas arrived on scene along with Sergeant Adam Scherrer. Sgt. Thomas observed a blue Nissan Kick with six to ten bullet holes on the outside of it. He learned that the driver of the vehicle was named Blaze Davis ("Blaze") and that the young shooting victim was the brother of the man in the passenger seat of the Nissan, [R.C.], who was also known as "Brody."

Blaze was very scared at the time. She expressed that she wanted to get to the hospital to be with the victim and tried to walk away from the officers. At one point, Blaze was acting very agitated; the officers handcuffed her to get her to calm down. After she was calmer, she was able to talk to the officers and visit the scene of the shooting.

Sgt. Thomas drove Blaze back to the scene of the shooting, which was an Exxon gas station on Miles Road, and had her explain to him what had happened. Blaze stated that the shooting was by a black vehicle with multiple occupants. She believed that two occupants of the vehicle had firearms.

Ptl. Reginald Rucker and Ptl. Stetka went to the gas station and spoke with the clerk working that night. After speaking with the clerk, who

confirmed that there had been a shooting, the officers went outside to look for shell casings. Because it was dark, and the weather was very windy and rainy, the officers had to hurry to collect any evidence. Ptl. Rucker located nine shell casings at the west entrance/exit of the gas station.

Ptl. Stetka then went to the hospital where J.P. was going into surgery. He learned that [R.C.] was also there, being treated for minor injuries. [R.C.] was able to tell Ptl. Stetka what had happened and identified someone known as "Main" as a suspect and stated that the vehicle where the shots had come from was dark-colored. [R.C.] told Ptl. Stetka that Main had pulled a firearm on him at an earlier encounter.

There was a security guard at the gas station. Prior to the incident occurring, there were eight to ten vehicles at the gas station, and the security guard had told them to disperse. When asked about the incident by Ptl. Rucker, the guard stated that he was inside the station at the time, but that he had not observed any shooting that night. He did not call the police because he did not believe the shooting had occurred on the gas station property.

Sgt. Michael Turner went to the Exxon station to retrieve the surveillance camera video. He spoke with the owner of the gas station, who was aware that a shooting had occurred on the property. The owner had trouble accessing the video but was able to pull it up on his cell phone. Sgt. Turner used his body cam to record the footage from the owner's cell phone.

There was footage from two different cameras at the gas station. The first camera depicted the parking lot area on the west side of the gas station. The video showed a darker-colored vehicle and a lighter-colored Mercedes. The second camera depicted the south side of the gas station, where the pumps were located. Blaze's Nissan Kick can be seen in the video.

The video showed three heavy-set individuals getting into a silver Mercedes and driving southbound through the Exxon parking lot. The Mercedes can be seen pulling alongside the driver's side of the Nissan Kick. The Mercedes paused briefly, and then the Nissan Kick pulled away at a high rate of speed. The Mercedes then left as well. Sgt. Turner did not observe any altercation between the occupants of the two vehicles nor did he observe any weapons.

Janay Bland ("Bland") was at the gas station on the night in question. Bland knew [Arthur], whom she knew as "Inky," and [Arthur's] codefendant, [Bethel], whom she knew as "Veil." She heard shots that night but did not know how many; she did not see the shooting. She did not see [Arthur] or [Bethel] at the gas station.

Rayana Howard ("Howard") was also at the gas station that night and saw [Arthur] or [Bethel] in a two-door Mercedes. She observed [Bethel] in the driver's seat and [Arthur] in the passenger seat.

[R.C.] saw the Mercedes pull up next to the Nissan Kick in which he was a passenger. He had seen [Bethel] driving the vehicle. [R.C.] was looking down at his phone when he saw laser beams on the windows — one on the front window and one on the back. He saw the barrel of a gun point toward the window on the driver's side. He could not see who was holding the gun, but saw an individual in a white shirt. He believed that[Bethel] had been wearing a white shirt earlier that night. He told Blaze to drive, and as she took off, shots were fired. J.P. was hit multiple times, and [R.C.] was grazed by a bullet on his back.

At the police station the following day, Det. Curry showed [R.C.] a photo lineup. From that lineup, [R.C.] identified [Bethel] as having had flashed his gun at him earlier on the night of the shooting. This differed from when he initially told Ptl. Stetka that it was Main who had flashed his gun at him.

J.P. was in the backseat of the Nissan Kick and had observed a "guy" driving the Mercedes, a "boy" in the backseat, and a "girl" in the passenger seat. He saw the guns pointed at Blaze's car but did not get a good look at who was shooting at them.

*State v. Bethel*, 2024-Ohio-1365, ¶ 2-19 (8th Dist.).

{¶ 7} The jury found Bethel guilty of all four counts of felonious assault. The court then found him guilty of having a weapon while under a disability and he was sentenced to an aggregate term of 29 years to 31 and one-half years at the Lorain Correctional Institution.

{¶ 8} Bethel now appeals the jury's verdict raising four assignments of error:

ASSIGNMENT OF ERROR NO. I:

Mr. Bethel received ineffective assistance of counsel when his counsel failed to call a witness, who counsel had previously indicated was crucial to Mr. Bethel's defense.

ASSIGNMENT OF ERROR NO. II:

Mr. Bethel's right to due process was violated when the State of Ohio engaged in prosecutorial [mis]conduct during closing argument.

ASSIGNMENT OF ERROR NO. III:

Mr. Bethel received ineffective assistance of counsel when his counsel failed to object to prosecutorial misconduct during the State's closing argument.

ASSIGNMENT OF ERROR NO. IV:

Mr. Bethel's convictions are against the manifest weight of the evidence.

**Law and Analysis**

**Second Assignment of Error**

{¶ 9} For the sake of judicial economy, we will be discussing Bethel's assignments of error out of order, beginning with the second assignment of error. For his second assignment of error, Bethel alleges that his right to due process was violated when the State of Ohio engaged in prosecutorial misconduct during closing argument. Bethel alleges there were three types of misconduct the prosecutor engaged in during closing arguments: (1) expressing opinions on witnesses' truthfulness; (2) shifting the burden of proof to the defendants and (3) demeaning the defense. Bethel admits that he failed to object to any of the alleged misconduct during trial.

**Standard of review**

{¶ 10} "A prosecutor's remarks constitute misconduct if the remarks were improper and if the remarks prejudicially affected an accused's substantial rights." *State v. Williams*, 2003-Ohio-4164, at ¶ 44, citing *State v. Smith,* 14 Ohio St.3d 13, 14 (1984).

{¶ 11} When there is no objection to prosecutorial misconduct during the trial, it must be shown to amount to plain error. *State v. Newman*, 2020-Ohio-658, ¶ 8 (8th Dist.), citing *State v. White*, 1998-Ohio-363 ("Since defense counsel failed to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error.") Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). An error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Eisermann*, 2015-Ohio-591, ¶ 71 (8th Dist.), citing *State v. Becker*, 2014-Ohio-4565 (8th Dist.). Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83 (1995).

**Analysis**

{¶ 12} The first alleged misconduct occurred when the State commented on the credibility of witnesses based upon their in-court testimony. Bethel acknowledges that there were many versions of events presented by the various

witnesses. The State commented on which witness's testimony it believed was not truthful or was evasive. A prosecutor may comment on the credibility of witnesses based upon their in-court testimony. *State v. Price*, 60 Ohio St.2d 136, 140 (1979).

{¶ 13} Bethel fails to establish that, but for these comments, the outcome of the proceeding would have been different. There was a fair amount of conflicting testimony by the witnesses and before the jury about what occurred, where and who was present, when. Bethel fails to prove it was prejudicial for the State to acknowledge that fact during closing arguments or to suggest what in-court testimony the State believed to be credible. There is no evidence that these comments affected the outcome of this case.

{¶ 14} The second alleged misconduct occurred when the State attempted to shift the burden of proof to Bethel to prove his innocence by asking the jurors to consider what they thought Bethel should do at trial if he knew truth was on his side.

{¶ 15} After a careful reading the alleged improper statement in the transcript, we find that the State's comment does not amount to plain error. The State's comment did not amount to telling the jury Bethel had a burden of proof at trial. The comments concerned what questions defense counsel did or did not ask witness–victim J.P. and why. At no point did the State suggest that Bethel had any kind of burden of proof at trial. We find this statement did not affect the outcome of this case and thereby there is no plain error for this statement.

{¶ 16} The last suggested alleged misconduct occurred when "[t]he prosecutor demeaned the defense as just 'defense attorney 101.'" Bethel alleges that

during closing argument the prosecutor insinuated that "1) defense counsel did not believe the defense that she was presenting and, 2) [] it was all just standard smoke and mirrors designed to mislead the jury – 'defense attorney 101.'"

{¶ 17} Even if we were to find these statements improper, Bethel puts forth no evidence that he was somehow prejudiced by these statements. There is nothing in the record and no argument is made that, as a result of these statements, the jury verdict would have been different. It cannot be said that Bethel did not have a fair trial. As such, we decline to find these comments amount to plain error.

{¶ 18} Wherefore, none of these comments by the State amount to plain error and Bethel's second assignment of error is overruled.

**First and Third Assignments of Error**

{¶ 19} Bethel's first and third assignments of error allege ineffective assistance of counsel.

**Standard of Review**

{¶ 20} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) "counsel's performance fell below an objective standard of reasonable representation," and (2) they were "prejudiced by that performance." *State v. Collier*, 2020-Ohio-3033, ¶ 18 (8th Dist.), citing *State v. Hill*, 2018-Ohio-4327, ¶ 21 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).

{¶ 21} For the second prong, prejudice is established when the defendant demonstrates "'a reasonable probability that but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Collier* at ¶ 18, quoting *Strickland* at 694.

{¶ 22} "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *State v. Marriott*, 2021-Ohio-2845, ¶ 11 (8th Dist.).

{¶ 23} "The decision to call or not call witnesses is generally a matter of trial strategy and, absent a showing of prejudice, does not deprive a defendant of the effective assistance of counsel." *State v. Lopez*, 2011-Ohio-182, ¶ 93 (8th Dist.), citing *State v. Utz*, 2004-Ohio-2357, ¶12 (3d Dist.), citing *State v. Williams*, 74 Ohio App.3d 686, 694 (8th Dist. 1991).

**Analysis**

{¶ 24} For his first assignment of error, Bethel alleges that his counsel was ineffective for failing to recall Warrensville Heights Police Officer Stetka ("Ofc. Stetka") to testify during his case-in-chief. Bethel alleges this was error because Ofc. Stetka's testimony regarding what witnesses initially told him conflicted with Ofc. Steka's in-court testimony.

{¶ 25} We note at the outset that Ofc. Stetka was called to testify in the State's case-in-chief and was subject to cross-examination and recross-examination by both Bethel's attorney and Arthur's attorney.

{¶ 26} After the witness testimony was concluded, Bethel's counsel informed the court that "[she] would like to reserve potentially calling him again and ask that

he be available if need be." Defense suggested that Ofc. Stetka may be needed based "upon further impeachment of a potential witness through extrinsic evidence and I may ask him to be recalled." The court informed the witness he was still under subpoena and subject to be recalled as a part of the defense's case-in-chief.

{¶ 27} After the State rested, defense counsel wanted to call Ofc. Stetka in Bethel's case and was informed by the State "that Officer Stetka went on a road trip and is not available." Defense counsel requested "a few minutes to determine if I'm going to call the other officer," Sergeant Scherrer.

{¶ 28} The State argued Ofc. Stetka did testify and was subject to cross-examination, ergo, what more did defense counsel need from him that they could not have gotten out of him the first time? The following exchange occurred between defense counsel and the court:

> THE COURT: Do you believe him to be a material witness to your case, your honor, or do you believe you can proceed without his testimony?
>
> DEFENSE COUNSEL: I believe I can proceed without Officer Stetka's testimony.
>
> . . .
>
> DEFENSE COUNSEL: Your Honor, I'll take it at face value that he's not available. I'm not going to ask the Court to delay the trial. We're prepared to move forward with closing . . .;
>
> . . .
>
> THE COURT: Thank you. [Defense counsel] are you satisfied as an officer of the Court on somebody representing your client that you can still do so diligently and capably without having the opportunity to call these two witnesses?
>
> DEFENSE COUNSEL: I do, your Honor.

The court then asked Bethel if he was okay moving forward:

> THE COURT: Thank you. Mr. Bethel, have you had an opportunity to discuss this matter with your attorney?
>
> DEFENDANT J. BETHEL: Yes, your Honor.
>
> THE COURT: And are you content to go forward or would you like to further speak to your attorney?
>
> DEFENDANT J. BETHEL: I'd like --
>
> THE COURT: Or postponement so that these two witnesses may be obtained and have them come in?
>
> DEFENDANT J. BETHEL: I'll continue to go further.
>
> THE COURT: Very well. To go forward?
>
> DEFENDANT J. BETHEL: Forward yes.
>
> THE COURT: Without those witnesses being called?
>
> DEFENDANT J. BETHEL: Yes, your Honor.

Both defense counsel and Bethel agreed to move forward without calling Ofc. Stetka back to the stand rather than postponing the trial to recall him.

{¶ 29} After reviewing the transcript, we find no error in defense counsel's decision to not delay the trial over one witness, especially considering the witness was already subject to cross-examination. This decision falls squarely within the "trial strategy" ambit and Bethel fails to demonstrate any prejudice from this strategic decision. *Lopez*, 2011-Ohio-182, at ¶ 93. Therefore, we find that Bethel did not receive ineffective assistance of counsel regarding this decision.

{¶ 30} Bethel's first assignment of error is overruled.

{¶ 31} Bethel alleges in his third assignment of error that he received ineffective assistance of counsel when his defense attorney failed to object to alleged prosecutorial misconduct during the State's closing arguments.

{¶ 32} Bethel's argument here centers on the same alleged prosecutorial misconduct that is the gist of his second assignment of error. Based on our finding that there was no prosecutorial misconduct, we cannot now say here that counsel was ineffective for not objecting.

{¶ 33} We find counsel was not ineffective and overrule Bethel's third assignment of error.

**Fourth Assignment of Error**

{¶ 34} For his fourth assignment of error, Bethel alleges that his conviction is against the manifest weight of the evidence. We disagree.

**Standard of Review**

{¶ 35} When reviewing a manifest weight challenge, an appellate court, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Virostek*, 2022-Ohio-1397, ¶ 54 (8th Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "'only in the exceptional case in which the evidence weighs

heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Martin* at 175.

{¶ 36} As this court has previously stated:

> The criminal manifest weight of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St. 3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386, 1997-Ohio-52, 678 N.E.2d 541 (1997). Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's? *Wilson* at *id*. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 2000-Ohio-276, 723 N.E.2d 1054 (2000).

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Wilson* at *id.,* quoting *Thompkins* at *id*.

*State v. Williams*, 2020-Ohio-269, ¶ 86-87 (8th Dist.).

{¶ 37} In its role as the "thirteenth juror," an appellate court must review the entire record, weigh the direct and circumstantial evidence and all reasonable inferences drawn therefrom, and consider the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *Martin*.

### Analysis

{¶ 38} Bethel alleges that his conviction is against the manifest weight of the evidence and that the witnesses' varying, and inconsistent, testimony and the video footage did not support a conviction. We disagree.

{¶ 39} We acknowledge that at trial there was inconsistent testimony presented by the State's witnesses including the testimony of witnesses at the gas station and between the witnesses' testimony and their prior statements to the police. The inconsistencies and varying testimony consisted of what type of vehicle Bethel was driving, the color of the vehicle, the number of shooters in the car and how many shots were fired. However as noted in *Bethel* 1:

> [A] defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness'[s] testimony are inconsistent or contradictory. *State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 40. *See, e.g., State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.); *see also State v. Wade,* 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38 ("A conviction is not against the manifest weight of the evidence solely because the [factfinder] heard inconsistent testimony."); *State v. Mann*, 10th Dist. Franklin No. 10AP-1131, 2011-Ohio-5286, ¶ 37, quoting *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, 7 (May 28, 1996) ("'While [a factfinder] may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'"). Any inconsistencies in the testimony presented do not establish that the jury clearly lost its way in finding that appellant was one of the shooters.

*Bethel*, 2024-Ohio-1365, at ¶ 38. The inconsistent testimony among the witnesses in this case is not sufficient to establish the jury lost its way.

{¶ 40} Furthermore, as set forth in *Bethel* 1, there was consistent testimonial and physical evidence to establish that

> (1) a silver two-door Mercedes pulled up to the Nissan Kick [at the gas station] and soon after, the Nissan Kick sped off; (2) the shots fired at the Nissan Kick came from the vehicle next to it, which was the silver Mercedes; (3) the bullet holes on the [Nissan Kick] were located on the side that would have been next to the silver Mercedes; (4) a silver two-

door Mercedes was registered to [Bethel]; [5] [Bethel] was the driver of the silver Mercedes that night, and [Arthur] was a passenger; [6] an unidentified young woman was the only other occupant of the [silver Mercedes]; [7] two guns were pointed out of the passenger-side window [of the silver Mercedes]; and [8] laser beams were seen coming from the silver Mercedes into the Nissan Kick. While the surveillance video does not show the actual shooting, it does depict a brief interaction between the silver Mercedes and the blue Nissan Kick, after which the Nissan Kick sped off.

*Bethel* 1 at ¶ 30. The cumulative testimonial and physical evidence, if believed, established that Bethel was one of the individuals in the two-door silver Mercedes who fired a weapon into the Nissan Kick and ultimately shot J.P. in the back, shoulder and leg.

{¶ 41} Having reviewed the entire record, we cannot say that the jury in this case clearly lost its way and created such a manifest miscarriage of justice that Bethel's convictions must be reversed and a new trial ordered. *Virostek*, 2022-Ohio-1397, at ¶ 54.

{¶ 42} We find Bethel's convictions were not against the manifest weight of the evidence. Accordingly, his fourth assignment of error is overruled.

{¶ 43} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

EMANUELLA D. GROVES, J., and
SEAN C. GALLAGHER, J., CONCUR